IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DOUGLAS A. HIGH, Individually )
and On Behalf of All Others )
Similarly Situated, )
)
    Plaintiffs, )
)
v. ) NO. 3:04-0121
) JUDGE HAYNES
SATURN CORPORATION, )
)
    Defendant.

**MEMORANDUM**

Plaintiff Douglas A. High filed this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), and also asserts claims under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, et seq. ("THRA"), and Tennessee common law. Plaintiff's claims arise from his termination for allegedly violating a rule prohibiting an employee working more than twelve hours consecutively and falsifying his time records to conceal his violation.

Before the Court are two motions: (1) Plaintiff's motion for class certification (Docket Entry No. 18); and (2) the Defendant's motion for summary judgment. (Docket Entry No. 39). Responses have been filed to both motions (Docket Entry Nos. 24, and 43). Although the Court would normally address the Plaintiff's motion for class certification first, the Court deems the circumstances of this action to counsel consideration first of the Defendant's motion for summary judgment.

In its motion for summary judgment, Defendant contends, in sum: (1) that Plaintiffs claims are time-barred under the applicable statutes of limitations; (2) that Plaintiff's proof does

not establish a prima facie case of age discrimination in his merit pay raises and termination; (3) that in any event, the Defendant had legitimate non-discriminatory reasons for terminating Plaintiff; (4) that Plaintiff's ERISA claim for interference with the attainment of ERISA-covered benefits fails for lack of proof that Saturn had a specific intent to do so; (5) that Plaintiff's state law claims are preempted by ERISA because Plaintiff's claims "relate[] to" Saturn employee benefits plans; and (6) that Plaintiff's defamation claim fails because he cannot prove that Saturn published any false or defamatory statements about Plaintiff to any outside third party. Because Plaintiff fails to satisfy all of the elements of each of his claims, Defendant argues summary judgment is proper.

In his response to Saturn's motion, Plaintiff claimed that Saturn should be equitably estopped from asserting a statute of limitations defense because it "fraudulently concealed" the "true reason" for his termination, and that he did not discover what he believed to be the "true reason" for his termination until April 2003. See Docket Entry No. 8; High Dep. at 201. On April 12, 2004, this Court denied Saturn's earlier motion without prejudice pending discovery. See Docket Entry No. 23.

For the reasons set forth below, the Court concludes that Plaintiff's claims are time-barred and should be dismissed as untimely.

### A. FINDINGS OF FACT[1]

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct.

2

### 1. Plaintiff's Employment

The Defendant hired Plaintiff as an Operations Technician in 1991. (Docket Entry No. 46, Plaintiff's Response to Defendant's Statement of Undisputed Facts at ¶ 1). Prior to his employment at Saturn, Plaintiff worked at General Motors from approximately 1985-87. As an Operations Technician at Saturn, Plaintiff was a member of the collective bargaining unit represented by the United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW"), Local 1853, and he was thus a "represented team member," Saturn's term for union employees. Id. at ¶2.

The terms and conditions of Plaintiffs employment were covered by the Memorandum of Agreement and Guiding Principles, which together are the equivalent of a collective bargaining agreement in a traditional union-management environment. (Docket Entry No. 25, Exhibit 2 thereto, High Deposition at 34, Id. at Exhibit 3 LaFevor Declaration). As a non-represented team member, Plaintiffs terms and conditions of employment were not governed by a collective bargaining agreement. Instead, Plaintiffs Business Team Leader made decisions about his base pay raises and performance awards. LaFevor Declaration at ¶ 30-31. Different team members received different raise amounts. Plaintiff received two merit pay raises during his employment as a non-represented team member at Saturn. (Docket Entry No. 46, Plaintiff's Response to

---

2548, 91 L.Ed.2d 265, 276 (1986). The Court concludes that there are not any material factual disputes, thus, this section constitutes findings of fact under Fed.R.Civ.P. 56(d).

Upon review of Plaintiff's Response to Defendant's Statement of Undisputed Facts (Docket Entry No. 46) there are not any material factual disputes. Plaintiff did not comply with Local Rule 8(b)(7) by citing the evidentiary record to support the few statements with which he disagrees. The Court deems all of the Defendant's Statements of Undisputed Facts to be undisputed.

3

Defendant's Statement of Undisputed Facts at ¶ 5).

In 1992, Plaintiff applied for a Senior Consumer Advisor position in Saturn's Service Parts Operations ("SSPO"), which is a "non-represented" position that is not covered by any collective bargaining agreement. Id. at ¶ 3. In September 1999, Plaintiff transferred to a Quality Coordinator position, another "non-represented" position and remained in that position until September 23, 2002 when he was terminated. Id. at ¶ 4.

Plaintiff frequently participated in Saturn's Helping Hands Program, a program that allows team members who normally do not work on the production line to work additional hours on the production line, when needed. Id. at ¶6. To participate in the Helping Hands Program, the team member must complete a "Non-SSPO Overtime Authorization" form and receive a signature from an appropriate supervisor. Id. at ¶ 7. There is proof that team members are not allowed to work more than twelve hours consecutively without permission. Id. at ¶ 8.

On August 20, 2002, Plaintiff worked eight hours on his regular shift, and then requested to work four additional hours under the Helping Hands Program. Id. at ¶ 9. Yet, after twelve hours of work, Plaintiff continued working an additional four hours. Plaintiff had previously never worked more than twelve hours consecutively. Plaintiff recorded the additional four hours on the Non-SSPO Overtime Authorization Form on August 19, 2002 to avoid showing a total of 16 hours. Id. at ¶ 10. Plaintiff asserts that Jack Knowles, a Rep OMA gave permission for him to work the extra four hours, but did not expressly tell Knowles of the total 16 hour. Id. at ¶ 13.

Plaintiff had attended a team meeting where Andrea Shaw, Plaintiff's Team Leader, explained the Twelve Hour Rule, that is also printed on the Non-SSPO Overtime Authorization Form. Id. at ¶ 13.

Saturn terminated Plaintiff on September 23, 2002, after discovering that Plaintiff had worked longer than twelve hours consecutively, in violation of the Twelve Hour Rule. Saturn also terminated Andrea Cargle, who was under forty years of age at the time, for a similar offense on the same day. (Docket Entry No. 25, High Deposition at 139, Exhibit 2 thereto; and Id. at LaFevor Declaration at ¶ 27).

On January 15, 2004, almost fifteen months after his termination, Plaintiff filed this action, alleging age discrimination,[2] interference with benefits, fraud and defamation.

## 2. The Defendant's Retirement Plan

As a GM hourly employee, Plaintiff participated in the GM Hourly-Rate Employees Pension Plan ("GMHRP"). (Docket Entry No. 46 at ¶ 16). Plaintiff ceased to be an active participant in the GMHRP when he left GM in 1987. Id. When Plaintiff was a represented team member at Saturn, he participated in the Saturn Individual Retirement Plan C'Saturn IRP"), a defined contribution plan solely for represented team members. Id. at ¶ 17. Saturn made contributions on Plaintiff's behalf to the Saturn IRP for one year and three months because he was a represented team member participating in the Saturn IRP for that length of time. Id.

When Plaintiff became a non-represented team member in 1992, Plaintiff ceased to be an active participant in the Saturn IRP, and began participating in the General Motors Salaried Retirement Program ("GMSRP"). Id. at ¶ 19. From January 1,1993, until December 31, 2000,

---

[2]Although Plaintiff argues that Saturn violated the Age Discrimination in Employment Act ("ADEA") in his Motion for Class Certification, Docket Entry No. 18, this claim is absent from his Complaint. Further, Plaintiff asserted in his response in opposition to Saturn's motion to dismiss that he is pursuing his age discrimination claims pursuant only to the THRA See Docket Entry No. 8. Plaintiff never filed a charge of discrimination with the Equal Employment Opportunity Commission or the Tennessee Human Rights Commission alleging age discrimination against Saturn. See Complaint ¶ 9.

5

Plaintiff was an active participant in the Saturn Personal Choice Retirement Plan. Id. at ¶ 20. Effective January 1, 2001, Plaintiff and all other non-represented team members with any prior GMSRP credited service were permitted to choose between remaining in the Saturn PCRP or returning to the GMSRP. Plaintiff elected to return to the GMSRP, where he remained until his employment terminated. Id.

As of the date of his termination, Plaintiff had accrued one year, three months in the Saturn IRP; 5 years, 8 months in the GMSRP; and 8 years in the Saturn PCRP. Id. at ¶ 21.

### B. CONCLUSIONS OF LAW

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material.</u>

> Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact.

7

Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>

8

* * *

> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed</u>.'

<u>Liberty Lobby</u>, 477 U.S. at 248, 252, 106 S. Ct. 2505, 91 L.Ed.2d at 211-212, 214 (citation omitted and emphasis added).

It is likewise true that

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Company</u>, 791 F.2d. 43, 46 (6th Cir. 1986) <u>app.</u> 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof

9

on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a

motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The Court addresses first whether Plaintiff's claims are time-barred. The statute of

11

limitations for Plaintiff's ERISA and THRA claims is one year. See Tenn. Code Ann. § 4-21-311(d), 28-3-104(a)(3); Leemis v. Medical Servs. Research Grp., 2003 U.S. App. LEXIS 19824, *35 (6th Cir. Sept. 24, 2003).

Saturn discharged Plaintiff on September 23, 2002, but Plaintiff did not file the instant lawsuit until January 15, 2004. Any claim for denial of higher raises based upon his age arose before his termination.

To toll a statute of limitations under the equitable estoppel doctrine, Plaintiff must establish that Saturn took overt steps to prevent him from filing a lawsuit. See Hill v. U.S. Dept. of Labor, 65 F.3d 1331, 1336-37 (6th Cir. 1995). Failure to disclose allegedly discriminatory reasons for discharge usually does not warrant equitable tolling. Id. Plaintiff agrees that Saturn did nothing to impede his investigation of a potential lawsuit nor timely file this action.

Within approximately seven months of his termination, Plaintiff received all of the information that he now relies upon to support his belief that he was unlawfully terminated because of his age. (Docket Entry No. 25, High Deposition at 201). From an unknown source, Plaintiff received in late 2002 time report sheets reflecting the recorded time for various Saturn team members. Id. at pp. 165-67, 197. In April 2003, Plaintiff claims to have received from an unknown source an email that was allegedly written by David Solima,[3] purporting to show a pattern of discrimination. Id. at 193, 197-98.[4] In April 2003, Plaintiff also received a note from

---

[3] David Solima is a Saturn colleague of Plaintiff

[4] Plaintiff has no personal knowledge of the matters in the email. Id. at 193. Because he has no personal knowledge of who provided him with the information and has no personal knowledge of the matters contained therein, his "evidence" is hearsay and not admissible to oppose summary judgment. See Knox v. Neaton Auto Prods. Mfg., 375 F.3d 451, 457 (6th Cir. 2004) (refusing to consider inadmissible hearsay within hearsay on summary judgment).

12

Dennis Makins, a co-worker, allegedly made by Tim Sullivan, a Team Leader, purporting to show discrimination. Id. at 170-71. Makins allegedly told Plaintiff that the note was left on his desk by an anonymous person. Id. at 171. Sullivan, however, does not have any responsibility or involvement with Plaintiff's pay raises, evaluations, or termination. Id. at 170-72.

Under these facts, the Court concludes that the equitable estopped doctrine does not apply to toll the statute of limitations. Thus, the Court concludes that Plaintiff's claims under ERISA and the THRA should be dismissed as time-barred

As to Plaintiff's claim of defamation, the statute of limitations for a slander action is six months after the allegedly slanderous words are uttered. Tenn. Code Ann. § 28-3-103; Heller v. Smither, 437 F. Supp. 1, 3 (M.D. Tenn. 1977). Plaintiff did not file the present action until January 15, 2004, more than six months from the date he learned of Saturn's alleged reasons for his termination. The Court concludes that Plaintiff's defamation claim is also time-barred.

For his fraud claim, Plaintiff alleges that Saturn concealed and misrepresented to him its true reason for terminating him in order to avoid paying future pension benefits. The facts for Plaintiffs fraud claims are identical to the facts of his § 510 claim under ERISA. A state law claim is preempted by ERISA if it "relates to" an employee benefit plan. 29 U.S.C. § 1144(a); Marks v. Newcourt Credit Group. Inc., 342 F.3d 444, 452 (6th Cir. 2003). In the context of ERISA, "the term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). To relate to a benefit plan, a law only need have "a connection with or reference to such a plan." Shaw v. Delta Air Lines. Inc., 463 U.S. 85, 97 (1983). ERISA's preemption provisions "are deliberately expansive." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987); see Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724,

13

739 (1985) ("The pre-emption provision was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements.").

The Sixth Circuit "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." Cromwell v. Epuicor-Eciuitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1991), with the Fifth Circuit including fraud claims as preempted claims. See e.g., Kramer v. Smith Barney, 80 F.3d 1080, 1083 (5th Cir. 1996). The Court concludes that Plaintiff's state law fraud claim is preempted.

In sum, the Court concludes that the Defendant's motion for summary judgment should be granted. With this conclusion, the Plaintiff's motion for class certification should be denied.

An appropriate Order is filed herewith.

ENTERED this the 13rd day of July, 2005.

WILLIAM J. HAYNES, JR.
United States District Judge

14